United States District Court

For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

LLOYD CHARTRAND,

      Plaintiff,

      v.

ILLINOIS UNION INSURANCE COMPANY
and DOES 1-50, inclusive,

      Defendants.

_____/

No. C 08-05805 JSW

**ORDER DENYING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND
GRANTING PLAINTIFF'S
CROSS-MOTION FOR
SUMMARY JUDGMENT**

Now before the Court are the cross motions for summary judgment filed by Plaintiff

Lloyd Chartrand ("Chartrand") and Defendant Illinois Union Insurance Company ("Illinois

Union") on the issue of insurance coverage.  The Court finds the motions appropriate for

decision without oral argument.  N.D. Civ. L.R. 7-1(b).  Accordingly, the hearing date of

September 4, 2009 is HEREBY VACATED.  Having carefully reviewed the parties' papers,

considered their arguments and the relevant legal authority, the Court hereby DENIES Illinois

Union's motion for summary judgment and GRANTS Chartrand's cross-motion for summary

judgment.

**BACKGROUND**

This is an insurance coverage dispute between Chartrand and Illinois Union arising out

of Plaintiff's demand for a defense and indemnity for claims asserted against him under a

commercial liability insurance policy.  Chartrand, the insured, contends that the defense costs

United States District Court

For the Northern District of California

incurred in the underlying lawsuit are covered under the Directors and Officers ("D&O")

liability policy issued by Illinois Union.  Illinois Union claims the defense costs are excluded by

virtue of the Insured v. Insured Exclusion in the policy barring coverage for a claim asserted by

an insured.  By way of its motion for summary judgment, Illinois Union seeks to have the Court

find that it had no duty to defend or indemnify Chartrand in the underlying tendered action and

that given the absence of coverage, Illinois Union is not liable for breach of contract and breach

of the covenant of good faith and fair dealing.  By his cross-motion, Chartrand seeks

reimbursement of attorneys' fees and costs reasonably incurred in his defense in a lawsuit

currently pending in Sonoma County Superior Court, *Carl B. Johnston Revocable Trust v.*

*Mentura, Inc.*, SCV 240480 ("JRT Action").

Illinois Union issued to Mentura, Inc. ("Mentura") a D&O policy, effective November

25, 2005 to November 25, 2006 ("the Policy").  The insuring clause of the Policy provides, in

pertinent part:

> The Insurer shall pay the Loss of the Directors and Officers for which the
> Directors and Officers are not indemnified by the Company and which the
> Directors and Officers have become legally obligated to pay by reason of
> a Claim first made against the Directors and Officers during the Policy
> Period, or, if elected, the Extended Period, and reported to the Insurer
> pursuant to subsection E.1. herein, for any Wrongful Act taking place prior
> to the end of the Policy Period.

(*See* Stipulation, Ex. 1 at 16.)

The term "Claim" is defined in the Policy as: "a written demand against any Insured for

monetary damages or non-monetary or injunctive relief [or] a civil proceeding against any

Insured seeking monetary damages or non-monetary or injunctive relief, commenced by the

service of a complaint or similar pleading."  (*Id.*)

///

///

///

///

///

///

2

Exclusion C.1(e), known as the Insured v. Insured Exclusion of the Policy provides:

> Insurer shall not be liable for Loss under this Coverage Section on account of any Claim:
> e)       brought or maintained by, on behalf of, or at the direction of any Insured in any capacity, any Outside Entity or any person or entity that is an owner of or joint venture participant in any Subsidiary in any respect and whether or not collusive,....[1]

(*Id.* at 19.)

On November 21, 2005, Carl B. Johnston submitted a claim letter, indicating that various named claimants had made claims against Mentura for failure to disclose "material facts concerning the Company's licenses, trademarks, patents and freedom from trademark and patent infringement." (*Id.* at Ex. 7.)  Claimants indicated that had they had such information, they would not have made investments in Mentura.  (*Id.*)  By letter from Jonathan Yee of Mentura dated November 22, 2006, tender was made to Illinois Union three days before expiration of the Policy.  By letter dated February 23, 2007, Illinois Union declined coverage for the claim on the basis of the Insured v. Insured Exclusion, contending that because Mentura's Chairman of the Board, Yee, was also a claimant, the claim fell within the exclusion. Following the initial claim letter, additional claimants filed three separate, although related and remarkably similar, lawsuits against Mentura and its officers and directors in the Superior Court of California in the County of Sonoma ("the Underlying Actions").

There is no significant dispute of material fact presented to this Court.  The legal question is whether the Insured v. Insured Exclusion applies to preclude coverage where there are claims asserted by both insureds and parties who are not insureds.  There is no binding authority on the issue, so the Court must review persuasive authorities from other jurisdictions.

The Court shall address additional facts as necessary to its analysis in the remainder of this Order.

---

[1]  Chartrand contends that the Insured v. Insured Exclusion from the D&O policy from 2004-2005 should apply.  The earlier policy provides merely that the "Insurer shall not be liable to make payments under this Coverage Section in connection with any Claim ... by, on behalf of, or at the direction of any of the Insureds."  (*See* Stipulation, Ex. 2 at 42.) Illinois Union concedes that "the language of the Insured v. Insured Exclusion [from the operative, later policy] was not materially in variance with the prior policy's Insured v. Insured Exclusion.  (Opp. Br. at 6.)  The Court similarly does not find the difference in policy language dispositive.

**United States District Court**
For the Northern District of California

1    **ANALYSIS**

2    **A.      Legal Standard on Motion for Summary Judgment.**

3           A court may grant summary judgment as to all or a part of a party's claims.  Fed. R. Civ.

4    P. 56(a).  Summary judgment is proper when the "pleadings, depositions, answers to

5    interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

6    genuine issue as to any material fact and that the moving party is entitled to judgment as a

7    matter of law."  Fed. R. Civ. P. 56(c).  An issue is "genuine" only if there is sufficient evidence

8    for a reasonable fact finder to find for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*,

9    477 U.S. 242, 248-49 (1986).  A fact is "material" if the fact may affect the outcome of the case.

10   *Id*. at 248.  "In considering a motion for summary judgment, the court may not weigh the

11   evidence or make credibility determinations, and is required to draw all inferences in a light

12   most favorable to the non-moving party."  *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir.

13   1997).

14          A principal purpose of the summary judgment procedure is to identify and dispose of

15   factually unsupported claims.  *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986).  The

16   party moving for summary judgment bears the initial burden of identifying those portions of the

17   pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of

18   material fact.  *Id.* at 323.  Where the moving party will have the burden of proof on an issue at

19   trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for

20   the moving party.  *Id.*  Once the moving party meets this initial burden, the non-moving party

21   must go beyond the pleadings and by its own evidence "set forth specific facts showing that

22   there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The non-moving party must "identify

23   with reasonable particularity the evidence that precludes summary judgment."  *Keenan v. Allan*,

24   91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251

25   (7th Cir. 1995)) (stating that it is not a district court's task to "scour the record in search of a

26   genuine issue of triable fact").  If the non-moving party fails to make this showing, the moving

27   party is entitled to judgment as a matter of law.  *Celotex*, 477 U.S. at 323.

28

United States District Court

For the Northern District of California

**B.      Governing Insurance Coverage Principles.**

A liability insurer owes a duty to defend whenever there is a potential for indemnity coverage under the insurance policy.  *See, e.g., Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 299-300 (1993).  Where any allegation demonstrates a potential for coverage, the insurer must mount and fund the defense of the entire action, including claims for which there is no potential for coverage.  *Buss v. Superior Court*, 16 Cal. 4th 35, 48 (1997).  In order to determine whether an insured has made a claim for covered damages, the court must compare the underlying complaints with the terms of the policy.  *Waller v. Truck Ins. Exch.*, 11 Cal. 4th 1, 18 (1995).  If the underlying complaints and any relevant extrinsic evidence submitted by the insured do not demonstrate that the underlying claims seek damages that are potentially covered under the policy, the insurance company has no duty to defend.  *Id.* at 19.

To interpret the meaning of the policy language, courts must first look at the written provisions of the policy.  "If the policy language is clear and explicit, it governs. ... When interpreting a policy provision, we must give its terms their ordinary and popular sense, unless used by the parties in a technical sense or a special meaning is given to them by usage."  *Palmer v. Truck Ins. Exch.*, 21 Cal. 4th 1109, 1115 (1999) (citations omitted).  In undertaking this analysis, courts must read limitations on coverage narrowly and insuring agreements "broadly so as to afford the greatest possible protection to the insured."  *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 648 (2003) (quoting *White v. Western Title Ins. Co.*, 40 Cal. 3d 870, 881 (1985)).

Policy exclusions are strictly construed, while exceptions to exclusions are broadly construed in favor of the insured.  *MacKinnon*, 31 Cal. 4th at 648; *Aydin Corp. v. First State Ins. Co.,* 18 Cal. 4th 1183, 1192 (1998).  An insurer cannot escape its basic duty to insure by means of an exclusionary clause that is unclear.  Any exception to the performance of the basic underlying obligation must be so stated as clearly to apprise the insured of its effect.  *MacKinnon,* 31 Cal. 4th at 648.

A policy provision is ambiguous if it is susceptible to two or more reasonable constructions.  *E.M.M.I., Inc. v. Zurich American Ins. Co.*, 32 Cal. 4th 465, 470 (2004).  Any

1    ambiguous terms are interpreted in favor of finding coverage, consistent with the insured's

2    reasonable expectations.  *Id.*  Policy language must be interpreted as a reasonable lay person

3    would read it, not as it might be analyzed by an attorney or insurance professional.  *Id.*; *see also*

4    *Crane v. State Farm Fire & Casualty Co.*, 5 Cal. 3d 112, 115 (1971).  "[W]ords ... are to be

5    understood in their ordinary and popular sense, rather than according to their strict legal

6    meaning" unless used by the parties in that sense.  Cal. Civ. Code  § 1644.

7         Chartrand has the initial burden of demonstrating that, interpreting the facts and

8    allegations most favorably to himself, construing any ambiguities in the Policy in favor of the

9    insured and construing exclusions strictly against Illinois Union, it is possible that the Policy

10   could potentially cover some damages alleged in any part of the tendered Underlying Actions.

11   *See Montrose*, 6 Cal. 4th at 300.  It is then Illinois Union's burden to demonstrate, again

12   construing all ambiguities and restraints on coverage in favor of Chartrand, that there was no

13   possibility of coverage for any claim made in the Underlying Actions.  *See id.*

14        **C.      The D&O Coverage May Cover the Underlying Actions.**

15        Because Chartrand has met his initial burden to show some coverage for the Underlying

16   Actions and Illinois Union cannot meet its burden to demonstrate that, at the time it denied

17   coverage, it had facts and information conclusively demonstrating that there was no potential

18   for coverage under the D&O provision, the Court finds that Illinois Union had a duty to defend

19   under the Policy.  *See Montrose Chem.*, 6 Cal. 4th at 299-300.

20        The Court accepts as true the undisputed fact that the Underlying Actions include both

21   insureds and claimants who were not insureds under the Policy.  Under California law, policy

22   exclusions are strictly construed, while exceptions to exclusions are broadly construed in favor

23   of the insured.  *MacKinnon*, 31 Cal. 4th at 648.  The Insured v. Insured Exclusion is applicable

24   when the insurer demonstrates that the "allegations of the complaint place the claims squarely

25   within the language of the exclusion."  *Bodewes v. Ulico Casualty Co.*, 336 F. Supp. 2d 263,

26   273 (W.D.N.Y. 2004).  Under California law which construes exclusions narrowly, the Court

27   finds that the operative exclusionary clause does not limit coverage for defense costs associated

28   with the claims made by parties who do not qualify as insureds.  Further, under California law,

United States District Court
For the Northern District of California

1   all insurance policies incorporate principles of allocation, whether or not the policy contains an

2   explicit allocation clause.  *See Buss*, 16 Cal. 4th at 50 ("As to the claims that are not even

3   potentially covered, however, the insurer may indeed seek reimbursement for defense costs.")

4          Because the allegations in the Underlying Actions include complaints by uninsured

5   plaintiffs, the duty to defend was triggered.  *See, e.g., Megavail v. Illinois Union Ins. Co.*, 2006

6   WL 2045862, *2-3 (D. Or. July 19, 2006) (holding that the exclusionary clause was not a

7   complete bar to defendant's obligation to defend the underlying lawsuit where duty is triggered

8   by the presence of uninsured plaintiffs in the underlying lawsuit); *see also Level 3*

9   *Communications, Inc. v. Federal Insurance Co.*, 168 F.3d 956, 960 (7th Cir. 1999) (holding that

10  the presence of an insured party "could conceivably contaminate the entire litigation," but found

11  that the allocation clause of the contract dealt "with this problem in another way, by requiring

12  allocation of covered and uncovered losses"); *see also Home Federal Savings and Loan Ass'n*

13  *of Niles v. Federal Insurance Co.*, 2007 U.S. Dist. LEXIS 68558, *12-13 (N.D. Ohio Sept. 4,

14  2007) (holding that because the policy did not clearly exclude the claims brought by non-

15  insureds, the insurance company had obligation to defend the underlying litigation, subject to

16  the allocation); *but see Sphinx International, Inc. v. National Union Fire Ins. Co. of Pittsburgh*,

17  226 F. Supp. 2d 1326, 1336-37 (M.D. Fla. 2002) (holding that, under Florida law and in the

18  absence of an express allocation clause or implied principle, if even a single plaintiff in the

19  underlying case is an insured, the Insured v. Insured Exclusion bars any defense or indemnity

20  obligation).

21         Because under California law, all insurance policies incorporate principles of allocation,

22  the Court finds persuasive the reasoning of the out-of-circuit cases finding the Insured v.

23  Insured Exclusion not to preclude coverage for all underlying suits where instituted by both

24  insured and non-insured claimants where the court can allocate the costs of defense.  *See, e.g.,*

25  *Federal Insurance Co. v. Infoglide Corp.*, 2006 WL 2050694, *5-6 (W.D. Tex. July 18, 2006)

26  (holding that the existence of an allocation clause clearly contemplated cases in which covered

27  claims could be combined with non-covered claims and the inclusion of an insured as a plaintiff

28  does not bar coverage for the entire claim).  Therefore, the Court finds that Illinois Union's duty

to defend was triggered as there was a potential for indemnity coverage under the Policy. *See Montrose Chem.*, 6 Cal. 4th at 299-300.

### CONCLUSION

For the foregoing reasons, the Court DENIES Illinois Union's motion for summary judgment and GRANTS Chartrand's cross-motion for summary judgment. The parties shall submit a joint case management statement by no later than September 25, 2009 and shall appear for a status conference on October 2, 2009 at 1:30 p.m.

**IT IS SO ORDERED.**

Dated:   August 28, 2009

_____
JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California

8